UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UTAHAMERICAN ENERGY, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Case No. 08-1791 (RJL) ) ) |
| U.S. DEPARTMENT OF LABOR, | ) ) |
| Defendant. | ) ) ) |

MEMORANDUM OPINION
(March 31, 2010) [# 12 and 13]

Plaintiff, UtahAmerican Energy, Inc., brings this action against the United States Department of Labor ("DOL") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* (2006) seeking records that the DOL compiled in the course of an investigation. The case is now before this Court on the parties' cross-motions for summary judgment. After careful review of the motions, applicable law, and the entire record herein, the Court has concluded that the DOL has complied with some, but not all, of its FOIA obligations in this case. Accordingly, both motions are GRANTED in part and DENIED in part.

BACKGROUND

This case arises out of the tragic collapse of the Crandall Canyon Mine in Price, Utah, on August 6, 2007. Six miners were killed that day. (Compl. ¶ 7.) Ten days later, while rescue operations were still ongoing, a second accident occurred at the mine which caused the death of three rescuers. (*Id.*) Naturally, these two events became the subject

1

of multiple investigations by various government entities. First, the accident was investigated by the Mining Safety & Health Administration ("MSHA"), the agency located within the DOL which is authorized by statute to investigate matters of mine safety.[1] 30 U.S.C. § 813(a). In addition, as a form of self-evaluation, the DOL set up an Independent Review Team ("IRT") to investigate the adequacy of the MSHA investigation. (*See* Declaration of George M. Fesak ("Fesak Decl.") ¶ 20.) Next, the two accidents became the subject of an investigation and hearings held by Congressional committees in both the House and the Senate. (Pl.'s Cross-Mot. [# 13] at 5.) Finally, both the DOL and the Committee of Education and Labor in the House of Representatives issued criminal referrals on August 27 and April 29, 2008, respectively, to the Department of Justice concerning potentially false and misleading statements made before and after the accidents. (Fesak Decl. Ex. J, Declaration of Brett L. Tolman, United States Attorney for the District of Utah ("Tolman Decl.") ¶¶ 3, 9.) These subjects are still being investigated by the United States Attorney for the District of Utah. (*Id.*)

In this case, UtahAmerican seeks documents accumulated in the course of the IRT investigation.[2] On August 14, 2008, UtahAmerican's counsel sent a FOIA request to

---

[1] MSHA, as a matter of practice, investigates every instance where there is a mining fatality. (Declaration of George M. Fesak ("Fesak Decl.") ¶ 20.) The Fesak Declaration is appended to Defendant's Motion for Summary Judgment [# 12].

[2] UtahAmerican also filed an earlier FOIA case against MSHA on October 17, 2008, in which it seeks documents compiled by the MSHA investigation team. *See UtahAmerican Energy, Inc. v. MSHA*, Civ. No. 08-1780 (D.D.C.) (RWR). For reasons unknown to the Court, plaintiff declined to notice these two cases as related even though they arise from the same factual events and share common issues of fact and law, and thus appear to fall within the definition of "related" cases under the Local Rules of Civil Procedure. *See* LCvR 40.5(a)(3)(ii)-(iii). Plaintiff failed to do so even though Rule 40.5(b) requires that the "parties *shall* notify the Clerk [of Court] of the

DOL for documents "connect[ed] with the investigation of the Independent Review Team." (Fesak Decl. Ex. A at 1.) Specifically, UtahAmerican requested the following:

> Any and all transcripts in MSHA's actual or constructive possession of each and every interview conducted by the IRT, including, but not limited to: [1] transcripts of the interviews of each and every individual listed in Appendix A ("List of Persons Interview") to the report entitled "Independent Review of MSHA's Actions at Crandall Canyon Mine" dated July 21, 2008; [2] transcripts of interviews of each and every individual interviewed by the IRT who worked at the Crandall Canyon Mine between January 1, 1995 and July 21, 2008; and [3] transcripts of interviews of each and every individual interviewed by the IRT who was a family member of any of the men fatally injured in either of the accidents that occurred at the Crandall Canyon Mine on August 6, 2007 and August 16, 2007.

(*Id.* at 1-2.) In the event interview transcripts did not exist, UtahAmerican requested "copies of any electronic recordings of such interviews, regardless of format or medium." (*Id.* at 2.)

On August 18, 2008, UtahAmerican supplemented its FOIA request in a second letter to the DOL seeking "copies of all documents, records, and exhibits" referenced in the IRT's July 21, 2008 published report. (Fesak Decl. Ex. B at 1.) Also requested in this letter were "copies of all documents upon which the IRT relied for its factual findings." (*Id.*)

---

existence of related cases." LCvR 40.5(b) (emphasis added). Furthermore, plaintiff's obligation to notify the Court of these related cases was ongoing throughout the case. *See* LCvR 40.5(b)(2)-(3). Notwithstanding such a failure, UtahAmerican, amazingly, invites this Court to study subtle differences between the litigation positions it took in these two separate cases because it believes those differences *may* impact the outcome of this case. (*See, e.g.*, Pl.'s Cross-Mot. at 23, 37-40; Pl's Reply [# 19] at 10-20.) Judicial efficiency alone would militate against that curious request.

UtahAmerican filed suit on October 20, 2008, claiming that the DOL never responded to, or even confirmed, receipt of its two FOIA requests. (Compl. ¶¶ 14, 16.) Roughly two weeks later, the DOL issued its first response to plaintiff, releasing 14 publicly available documents referenced in the published IRT report. (Fesak Decl. Ex. C at 1-2.) In this November 6, 2008 response, the DOL also directed UtahAmerican to the MSHA website, where other public documents referenced in the IRT report were available for viewing, and advised that it was withholding any remaining responsive material pursuant to FOIA exemptions 5 and 7(A).[3] (*Id.*) On June 19, 2009, the DOL made a second production to UtahAmerican which contained two compact discs of responsive materials. (Def.'s Mot. Ex. 1 at 2.) Additionally, the DOL claimed it had withheld responsive material from the second production under FOIA exemptions 2, 5, 6, 7(A), and 7(C). (*Id.*)

On July 15, 2009, shortly after its second production, the DOL moved for summary judgment on the grounds that it had fully complied with its obligations in response to UtahAmerican's FOIA request. UtahAmerican opposes the DOL's motion and has filed its own cross-motion for summary judgment. Both motions are now ripe for decision.

## LEGAL STANDARD

In response to a FOIA request, a government agency must conduct a "reasonabl[e]" search for responsive records. *Baker & Hostetler LLP v. Dep't of*

---

[3] FOIA exemptions are identified here by the subpart number they are assigned in the statute. For instance, FOIA Exemption 1 is based on the exemption found in 5 U.S.C. § 552(b)(1), and so on. *See* 5 U.S.C. § 552(b)(1)–(9).

*Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006). An agency defending against a FOIA suit can prevail on summary judgment if it shows "beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). "The court applies a 'reasonableness' test to determine the 'adequacy' of a search methodology, consistent with congressional intent tilting the scale in favor of disclosure." *Campbell v. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (citation omitted). With respect to withheld material, the Court "impose[s] a substantial burden on an agency seeking to avoid disclosure" based on a FOIA exemption. *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973).

Importantly, the Court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations. *See Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Under the law of our Circuit, "in the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). When an agency's affidavits demonstrate that "no material facts are in dispute," and if the agency "demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements,'" then it is entitled to summary judgment. *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

## ANALYSIS

The parties' cross-motions turn on whether DOL conducted an adequate search in response to UtahAmerican's request and whether it has properly invoked certain FOIA Exemptions. For the following reasons, the Court finds: (1) that DOL's search was inadequate in two respects, and (2) that DOL improperly invoked FOIA Exemptions 5 and 7(A) to withhold transcripts of the IRT interviews and associated exhibits.

### 1. Adequacy of DOL's Search

There is little question that DOL made "a good faith effort to conduct a search" for the records sought in UtahAmerican's first FOIA request, "using methods which can be reasonably expected to produce the information requested." *Baker & Hostetler LLP*, 473 F.3d at 318 (quotation marks omitted). Indeed, that request could be and was satisfied by reviewing an identifiable and discrete set of documents—specifically, transcripts of the 59 interviews the IRT conducted. (Fesak Decl. Ex. K, Declaration of Derek Baxter ("Baxter Decl.") ¶ 3.) By taking issue with DOL's claim that much of the transcript material is exempt and by questioning DOL's lengthy *Vaughn* index for such material, UtahAmerican implicitly acknowledges that DOL in fact located and reviewed a complete set of IRT transcripts.[4] (Pl.'s Cross-Mot. at 22.) Thus, it is clear on this record that the DOL performed an adequate search in response to UtahAmerican's first request.

Whether the DOL performed an adequate search in response to UtahAmerican's second request is, however, less clear. In essence, plaintiff's second request sought all

---

[4] The DOL notes that while it maintained six duplicate sets of IRT transcripts, it naturally reviewed just one set. (Fesak Decl. ¶ 13.) UtahAmerican does not challenge the DOL's exclusion of the five duplicative sets of interview transcripts.

6

documents that the IRT either referenced in its published report, or relied on to arrive at its factual findings. (Fesak Decl. Ex. B at 1.) The DOL explains its search by first describing the universe of IRT documents. Over the course of the IRT's investigation, it accumulated transcripts of the interviews it conducted itself along with a large volume of material it received from the MSHA, including transcripts of the interviews conducted by the MSHA's investigation team. (Fesak Decl. ¶ 9-10.) All of this information was stored on a secure segregated drive on the MSHA's computer system. (*Id.* ¶ 24.) According to the DOL, its search was more than adequate because it "reviewed the complete electronic file of documents compiled by the [IRT]." (Def.'s Opp'n to Pl.'s Cross-Mot. [# 17] ("Def.'s Opp'n") Ex. 4, Declaration of Jennifer C. Honor ("Honor Decl.") ¶ 3.)

The DOL acknowledges, however, that it excluded broad categories of documents from its review of the overarching IRT file. For instance, the DOL excluded from this search any material which had already been processed in response the an earlier FOIA request UtahAmerican made directly to the MSHA. (*See* Fesak Decl. ¶ 10.) UtahAmerican challenges this decision on the basis that it prevents the Court from "assess[ing] the validity and extent of the claimed duplication." (Pl.'s Cross-Mot. at 23.) I disagree. The DOL is under no obligation to review the same set of documents twice. Indeed, it is the law of our Circuit that "[t]he Freedom of Information Act does not require that the agency from which documents are requested must release copies of those documents when another agency possessing the same material has already done so." *Crooker v. Dep't of State*, 628 F.2d 9, 10 (D.C. Cir. 1980).

While the DOL was reasonable to avoid duplicative processing, it was less prudent when it unilaterally narrowed the scope of plaintiff's second request in another respect. By redefining plaintiff's request for documents "relied on for [the IRT's] factual findings" to mean documents "relied on for the final [IRT] report's *significant or principal* factual findings," (Def.'s Opp'n Ex. 5, Declaration of Thomas A. Mascolino ("Mascolino Decl.")) ¶ 6 (emphasis added)), the DOL failed to comply with its "duty to construe [the] FOIA request liberally." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). Stated simply, UtahAmerican's request was for documents relied on for *all* of the IRT's factual findings, not just those that the DOL's FOIA processors deemed to be "significant or principal." A narrowing interpretation of this nature is unreasonable and, in this situation, resulted in an inadequate search of the relevant documents requested.

Additionally, the DOL was unreasonable when it excluded from review, or withheld as non-responsive, certain materials which were referenced in the IRT report. While the DOL tries to justify this decision on the grounds that some documents referenced in the report were not relied on by the IRT for factual findings, this explanation *conflates* two distinct components of UtahAmerican's second FOIA request. (*See* Def.'s Opp'n at 10-14.) Plaintiff sought both the actual documents cited in the report, as well as the information relied on by the IRT. Thus, for example, certain e-mail messages which the DOL appears to concede were "alluded to" or "identified" in the IRT report are responsive to UtahAmerican's request, even though the DOL claims they were not relied on for the IRT's factual findings. (Def.'s Opp'n at 13-14.) The same is true of

8

the transcripts of the Senate Hearing on Crandall Canyon, (Def.'s Opp'n at 10-11), and any press conference videos which the DOL has stored in its possession, (Def.'s Opp'n at 12-13). Thus the DOL's search was inadequate to the extent it overlooked these materials, which must now be produced.

## 2. FOIA Exemptions

The DOL, of course, invoked a number of FOIA Exemptions to redact or withhold a large number of responsive documents from the IRT file. UtahAmerican's Cross-Motion for Summary Judgment, however, only opposes the DOL's withholding under Exemptions 7(A) and 5 for one category of documents: the IRT interview transcripts and associated exhibits.[5] (*See* Pl.'s Cross-Mot. at 26-37.) As such, the DOL is entitled to summary judgment on the remaining uncontested exemption claims.[6] As to

---

[5] UtahAmerican also challenges the DOL's withholding of other information besides the IRT interview materials based on its argument that this other information is not sufficiently described in the DOL's *Vaughn* index. (Pl.'s Cross-Mot. at 37-40.) Much of this material, which the DOL also withheld under Exemption 7(A), is characterized by plaintiff as the fruit of MSHA's accident investigation, which IRT subsequently came to possess and review. (*See id.*; Pl's Reply in Support of its Cross-Mot. ("Pl's Reply") [# 19] at 10-20.) As noted above, this material is already the subject of an earlier FOIA suit plaintiff brought against MSHA, and thus will not be considered by this Court. UtahAmerican's repeated insistence that these same MSHA documents be analyzed in both cases is misguided, to say the least, particularly in light of plaintiff's apparent belief that these two cases are not related under the Local Rules of Civil Procedure. Thus, for the reasons set forth in footnote 2, the Court declines to engage in such an analysis.

[6] UtahAmerican argues that the Court should not grant summary judgment on uncontested exemptions, but rather find such issues moot. (Pl.'s Reply at 2-3.) UtahAmerican's attempt to avoid a decision on the merits with respect to the uncontested exemptions is plainly wrong. Since UtahAmerican initiated this lawsuit, the DOL has had an obligation to comply with the FOIA request and a "substantial burden" to prove that any material it withheld falls within one of FOIA's exemptions. *See Vaughn*, 484 F.2d at 828. With respect to the material withheld under uncontested exemption claims, UtahAmerican's choice not to contest simply makes it more likely for the Court to find the DOL has met its burden. Indeed, with no material facts in dispute as to material withheld under uncontested exemptions, the Court finds that the DOL has met its

UtahAmerican's challenge to that one category of IRT interview documents, however, the Court grants plaintiff summary judgment because DOL inappropriately invoked Exemptions 7(A) and 5. How so?

a. *Exemption 7(A)*

The DOL is withholding all IRT transcripts in their entirety on the basis of Exemption 7(A), which permits agencies to withhold "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). "The principal purpose of Exemption 7(A) is to prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence." *Maydak v. Dep't of Justice*, 218 F.3d 760, 762 (D.C. Cir. 2000). Bearing in mind that it is the DOL's "substantial burden" to justify withholding these materials, *Vaughn*, 484 F.2d at 828, it is clear for the following reasons that the DOL has not sufficiently demonstrated how releasing the IRT interview materials "could reasonably be expected to cause some articulable harm" by interfering

---

burden and released all segregable information. It is therefore entitled to summary judgment on this information. *See Students Against Genocide*, 257 F.3d at 833. UtahAmerican points to no contrary legal authority. The cases it does cite stand only for the proposition that a FOIA case is rendered moot "once *all* requested records are surrendered." *Perry*, 684 F.2d at 125 (D.C. Cir. 1982) (emphasis added). Clearly, that is not the case here, and UtahAmerican acknowledges as much. (Pl.'s Reply at 3 n.2.)

with ongoing enforcement proceedings.[7] *See Kay v. FCC*, 976 F. Supp. 23, 37 (D.D.C. 1997) (citing *Bevis v. Dep't of State*, 801 F.2d 1386, 1388 (D.C. Cir. 1986)).

In its effort to meet its burden, the DOL has proffered the declarations of the United States Attorney for Utah and an attorney from the civil enforcement section at the DOL. The U.S. Attorney states in his declaration that his office has an ongoing criminal investigation into events surrounding the Crandall Canyon mine collapse, including "whether any false statements were made to federal officials." (Tolman Decl. ¶ 11.) Further, the U.S. Attorney opines that releasing the interview transcripts would undermine this part of the investigation because "those with any potential criminal liability will know exactly what federal officials contend they said or did not say, or did or did not do. This creates the possibility for those providing statements to compare their stories and to collaborate to obtain a consistency of detail and memory that will not be available if those statements are not released." (*Id.*) Similarly, The DOL civil enforcement attorney contends that disclosing portions of the IRT transcripts would "interfere with the ongoing civil enforcement activities [conducted by MSHA] by identifying the nature of the evidence that may be presented at trial and disclosing MSHA's evaluation of said evidence." (Baxter Decl. ¶¶ 1, 4, 6.) He also states that disclosing portions of other transcripts might "reveal names of potential MSHA witnesses," which "would interfere with the ongoing enforcement activities by

---

[7] Both parties spent a considerable amount of time briefing a threshold consideration of Exemption 7(A): whether the information at issue was in fact "compiled for law enforcement purposes." (Pl.'s Cross-Mot. at 27-29; Def.'s Opp'n 15-21.) The Court need not resolve this question because of its conclusion with respect to the Exemption's "interference" requirement.

identifying the nature of evidence that may be presented at trial and which MSHA and other witnesses posses such evidence, at a time in which the mine operator has not commenced discovery." (*Id.* ¶ 10.) Finally, he contends that such disclosure "would provide company employees with a chance to 'compare their stories' with the version of events recounted by the MSHA employees." (*Id.*) For the following reasons, their concerns, under the unique circumstances here, are hardly enough.

First, with respect to their mutual fear that releasing the interview transcripts could cause witness collusion or unfairly preview evidence to be presented at trial, the DOL is less than convincing. After all, a report based on the IRT interviews was published nearly two years ago. (Pl.'s Cross-Mot. Ex. A.) In addition, the MSHA published a separate accident investigation report based on its interviews, which included 20 of the IRT witnesses, on July 24, 2008. (Pl.'s Cross-Mot. at 32; Fesak Decl. ¶ 25.) To this day, both reports have been available in full on the MSHA's website.[8] The explanations and accounts of events described in these reports undoubtedly rely in significant part on the information learned from the interviews conducted during the IRT and MSHA investigations. Surely, the essence of what the witnesses had to say is—at a minimum—reflected in these reports. Thus, while it is difficult to know exactly how much of these witness accounts were not included in the final published reports, DOL's failure to explain with greater particularity how that information could compromise those ongoing investigations some two years later should not be rewarded by this Court.

---

[8] Single Source Page for Genwal Resources Inc., Crandall Canyon Mine, http://www.msha.gov/Genwal/CrandallCanyon.asp (last visited Mar. 31, 2010).

Thus, the question presented here is whether oblique references to alleged possible interference with ongoing investigations, under these circumstances, are sufficient to warrant the agency's non-disclosure. I think not. Any false statement previously given in the course of the MSHA or IRT investigation which is the subject of a still-ongoing investigation was made nearly two years ago. Since that time, any individual under investigation has had more than ample opportunity to compare his story with the two published reports or with other witnesses, either directly, or through their respective counsel. And, of course, if a target of the investigation were to modify, or recant, in the future any of his prior statements as a result of what he learns by reading these previously undisclosed IRT interview materials, he will undoubtedly attract prosecutorial attention either inside or out of the Grand Jury. Simply stated, I believe the risk of witness collusion at this late date, after so much information has been made public, is exaggerated and falls far short of the "substantial burden" that must be met to warrant the agency's use of this Exemption.[9]

Next, DOL argues that disclosing the transcripts could result in witness intimidation. (Def.'s Opp'n at 25.) I disagree. The 59 witnesses' identities are already known publicly, and fortunately, none have been intimidated to date. (Pl.'s Cross-Mot. at 31-32.) Exemption 7(A) requires "predictive judgment" of future harm which can "*reasonably be expected.*" *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d

---

[9] The DOL appears to misunderstand which party carries the burden at this stage of proceedings. It argues that UtahAmerican fails to "undermine[] DOL's determination that release of witness transcripts that go beyond that disclosed in the investigative report would cause harm to the on-going criminal investigation." (Def.'s Opp'n at 28.) But it is the DOL's "substantial burden" to *explain* its determination, not UtahAmerican's burden to undermine it.

918, 928 (D.C. Cir. 2003) (emphasis added). Given that all of the witnesses' identities are known and the agency's reports have been public for nearly two years, harm to any of these witnesses cannot be reasonably expected in the future and is thus an insufficient basis to rely on Exemption 7(A).[10]

In sum, the DOL's arguments and declarations are an insufficient reason to invoke Exemption 7(A). "Exemption 7(A) does not authorize automatic or wholesale withholding of records or information simply because the material is related to an enforcement proceeding." *North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir. 1989). Because the DOL has not carried its "substantial burden" to demonstrate that releasing the IRT interview transcripts and associated exhibits would likely interfere with an ongoing investigation, it cannot now invoke Exemption 7(A) to withhold any of this IRT material.[11]

---

[10] The DOL's final two arguments can be summarily rejected. First, the DOL is simply wrong to suggest that the transcripts are exempt because producing them now, prior to any discovery which might occur in subsequent proceedings, would interfere with ongoing investigations. (Def.'s Opp'n at 27 (citing Supp. Baxter Decl. ¶ 3-4).) "The fact that a defendant in an ongoing criminal proceeding may obtain documents via FOIA that he could not procure through discovery, or at least before he could obtain them through discovery, does not in and of itself constitute interference with a law enforcement proceeding." *North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir. 1989). Second, the DOL again misunderstands the burden allocation at this stage of proceedings when it says "plaintiff cites to no evidence that release of the information at issue would not reveal the inner workings of the U.S. Attorney's Office's criminal investigation." (Def.'s Opp'n at 27.) It is the DOL's burden to demonstrate that releasing the information would reveal details about the ongoing criminal investigation. Not surprisingly, the DOL has failed to demonstrate how producing this discrete set of interview materials, which was compiled by the IRT several years ago, could in any way divulge details about the investigation now taken up by the U.S. Attorney's Office.

[11] *But see Adair v. MSHA*, Civ. No. 08-1573 (D.D.C. Sep. 23, 2009) (EGS).

b. *Exemption 5*

As a backstop to Exemption 7(A), the DOL argues that 12 of the 59 interview transcripts are exempt in their entirety under Exemption 5. Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This Exemption applies to information that would otherwise be subject to an evidentiary privilege claim, and thus protected from disclosure, in the context of civil discovery. *Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 601 (D.C. Cir. 2001). The privilege claim the DOL seeks to invoke, however, is the so-called "*Machin* privilege,"[12] which the Supreme Court has characterized as "protecting confidential statements made to government air crash safety investigators." *Dep't of Justice v. Julian*, 486 U.S. 1, 20 (1988). This case, of course, does not involve that type of investigation.

Undeterred, the DOL nevertheless claims that the *Machin* privilege should be treated by this Court as a broad "accident investigation privilege." (Def.'s Mot. at 6.) Unfortunately, that phrase does not appear anywhere in the *Machin* opinion itself. In fact, so far as I can tell, it does not appear in any federal case! The only cases in our Circuit which have ever applied the *Machin* privilege have in fact involved air crash investigations. *See United States v. Weber Aircraft Corp.*, 465 U.S. 792 (1984); *Badwhar v. Dep't of Air Force*, 829 F.2d 182 (D.C. Cir. 1987). Moreover, the two cases defendant relies upon to support converting the *Machin* privilege to what it characterizes as the

---

[12] The privilege derives its name from *Machin v. Zuckert*, 316 F.2d 336 (D.C. Cir. 1963).

15

"accident investigation privilege"are, to say the least, of questionable persuasiveness.[13] (Def.'s Opp'n at 31-35.)

The DOL appears to be asking this Court to expand the *Machin* privilege beyond its characterization by the Supreme Court and its application in this jurisdiction under circumstances where that issue is not even squarely before this Court. Because exemptions in FOIA cases "must be narrowly construed" and the agency bears a "substantial burden" to justify withholding information, *Vaughn*, 484 F.2d at 823, 828, the DOL's failure to meet its burden here renders this Exemption unavailable.

## CONCLUSION

For these reasons, both parties' cross-motions for summary judgment are GRANTED in part and DENIED in part. Defendant is entitled to withhold information under FOIA Exemptions 2, 6, and 7(C), but it must disclose the IRT interview material it has withheld under Exemptions 5 and 7(A). Furthermore, defendant must complete an adequate search in response to plaintiff's second FOIA request. An appropriate Order will issue with this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[13] Both cases are from district courts outside this jurisdiction. *Ahearn v. Army Materials & Mechs. Research Ctr.*, 583 F. Supp. 1123 (D. Mass. 1984); *Cooney v. Sun Shipbuilding & Drydock Co.*, 288 F. Supp. 708 (M.D. Pa. 1968). Furthermore, because the information at issue in *Ahearn* was compiled by the military, its disclosure may have presented national security concerns similar to those mentioned in *Machin*, 316 F.2d at 339, and *Weber Aircraft*, 465 U.S. at 797, but absent here. That leaves *Cooney*, which does not appear to have been applied or even cited in this jurisdiction in the forty years since it was decided.